IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KEVIN M. WARGO | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 20-711-LPS-SRF |
| | ) | |
| v. | ) | |
| | ) | |
| DISASSEMBLY HOLDINGS, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I.  INTRODUCTION

Presently before the court in this declaratory judgment action is a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by defendant Disassembly Holdings, LLC ("Disassembly").[1]  (D.I. 6)[2] For the following reasons, the court recommends GRANTING Disassembly's motion.

### II.  BACKGROUND[3]

Plaintiff Kevin M. Wargo ("Mr. Wargo") signed the "Operating Agreements"[4] of two limited liability companies, co-defendants Gulfstream GIV-1177, LLC ("Gulfstream") and

---

[1] Disassembly is a member of co-defendants Gulfstream GIV-1177, LLC ("Gulfstream") and Falcon 20-257, LLC ("Falcon").  (D.I. 1 at ¶¶ 17, 19)  Disassembly moves to dismiss the complaint "individually and derivatively on behalf of" Gulfstream and Falcon.  (D.I. 6 at 1; D.I. 7 at 1 n.1, 13)  The court refers to Gulfstream, Falcon, and Disassembly collectively as "Defendants."

[2] The briefing for the pending motion is as follows: defendant's opening brief (D.I. 7), plaintiff's answering brief (D.I. 8), and defendant's reply brief (D.I. 9).

[3] The facts in this section are based upon allegations in the complaint, which the court accepts as true for the purposes of the present motion to dismiss.  *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

[4] The court refers to the Gulfstream GIV-1177, LLC Operating Agreement as the "Gulfstream Operating Agreement," the Falcon 20-257, LLC Operating Agreement as the "Falcon Operating Agreement," and both together as the "Operating Agreements."  (*See* D.I. 1 at ¶¶ 18, 20)  Both agreements are among the documents attached to the complaint as Exhibits A and B.  (D.I. 1-1;

Falcon 20-257, LLC ("Falcon").  (D.I. 1 at ¶¶ 17–20)  He signed both Operating Agreements in identical fashion in three places: (1) as the "Manager" of the respective "Company," (2) separately as a "Manager," and (3) as a "Member" of another entity, Strong Tower Properties II, LLC (in the Gulfstream Operating Agreement) and Dumont Group Properties II, LLC (in the Falcon Operating Agreement).  (*Id.* at ¶¶ 18, 20; D.I. 1-1 at 44; D.I. 1-2 at 43)  Disassembly also signed the Operating Agreements as a "Member" of both Gulfstream and Falcon.  (D.I. 1 at ¶¶ 17, 19; D.I. 1-1 at 44; D.I. 1-2 at 43)

Each Operating Agreement defines the term "party" as "a signatory to this Agreement, including a Member, member of Management and any successor to any of the foregoing."  (D.I. 1-1 at 42, § 15.6; D.I. 1-2 at 41, § 15.6)  The Operating Agreements also contain the following "substantively identical" dispute resolution clause:

> [A]ll disputes, claims, questions, or differences shall be finally settled by arbitration administered by the American Arbitration Association before a single arbitrator in accordance with the provisions of its Commercial Arbitration Rules. . . . Unless otherwise mutually agreed to by the parties, the AAA arbitration shall take place in Chicago, Illinois, if requested by the Strong Tower, or in Wilmington, Delaware, if requested by the Investor Member.

(D.I. 1 at ¶ 15; D.I. 1-1 at 42, § 15.8; D.I. 1-2 at 41, § 15.8)

On May 4, 2020, Mr. Wargo was served with two demands for arbitration before the American Arbitration Association (the "AAA") in Wilmington, Delaware.  (D.I. 1 at ¶ 9)

---

D.I. 1-2)  The court cites the pages of the exhibits attached to the complaint as shown on ECF when viewing each attachment individually.  For example, the dispute resolution clauses in the Gulfstream Operating Agreement and the Falcon Operating Agreement can be found at D.I. 1-1 at 42 and D.I. 1-2 at 41, respectively.  "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  Accordingly, the court considers the Operating Agreements incorporated by reference in the complaint.  *See id.*; *Reach Acad. for Boys & Girls, Inc. v. Delaware Dep't of Educ.*, 46 F. Supp. 3d 455, 464 (D. Del. 2014).

Disassembly brought the first demand (the "Gulfstream Demand")[5] individually and on behalf of Gulfstream and the second demand (the "Falcon Demand")[6] individually and on behalf of Falcon. (*Id.* at ¶¶ 10–11) Mr. Wargo is named as a defendant in both demands as "an individual." (D.I. 1-1 at 3; D.I. 1-2 at 3) Among other things, the Demands claim that Mr. Wargo violated fiduciary duties he owed to the respective "Members" of Gulfstream and Falcon and that he is liable for fraudulent inducement and misrepresentation.[7] (D.I. 1 at ¶ 13)

Mr. Wargo asserts that he is not a "party" to the Operating Agreements and that he did not sign them in his "individual capacity." (*Id.* at ¶¶ 16–21) Accordingly, he filed the present action pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57 seeking a declaratory judgment that he is not bound in his individual capacity by the Operating Agreements and, therefore, is not required to arbitrate Defendants' claims against him. (*Id.* at ¶¶ 1, 6, 23–28) The complaint expressly disclaims that Mr. Wargo challenges the merits of the Demands for purposes of the instant suit.[8] (*Id.* at ¶ 13 n.1)

## III. LEGAL STANDARD

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule

---

[5] Attached as Exhibit A to the complaint. (D.I. 1 at ¶ 10, D.I. 1-1)

[6] Attached as Exhibit B to the complaint. (D.I. 1 at ¶ 11; D.I. 1-2)

[7] After the parties fully briefed the pending motion, Defendants filed a "Request for Judicial Notice" asking this court to "take judicial notice of the . . . decisions of the [AAA] determining that the parties' arbitration clause governed their disputes." (D.I. 11) Defendants attached the AAA decisions to their filing. (*Id.*, Ex. A & B) Although the AAA decisions are consistent with this Report and Recommendation, the court does not rely on them in making its Report and Recommendation. (*Id.* at Ex. A at 2–3, Ex. B at 2)

[8] "Mr. Wargo disputes the allegations made in the Gulfstream and Falcon Demands. However, in this complaint, Mr. Wargo challenges only the Defendants' ability to require him to arbitrate the claims, and therefore, Mr. Wargo does not address the assertions against him at this time, but reserves all rights to defend against these claims at a later date." (D.I. 1 at ¶ 13 n.1)

3

12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff.  *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *See Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555–56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted).  This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]."  *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).  The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

## IV.   DISCUSSION

"Under the Declaratory Judgment Act, district courts 'may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or

4

could be sought.'" *Benson v. Amguard Ins. Co.*, C.A. No. 16-196-LPS, 2017 WL 2672078, at *3 (D. Del. June 21, 2017) (quoting 28 U.S.C. § 2201(a) (2012)). "[D]istrict courts have 'unique and substantial discretion in deciding whether to declare the rights of litigants.'" *Id.* (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) ("The Declaratory Judgment Act provides that a court may declare the rights and other legal relations of any interested party, not that it must do so.") (internal emphasis, citations, and quotations omitted). However, the court's discretion "is not without limits." *Benson*, 2017 WL 2672078, at *3 (citing *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990)). A declaratory judgment action must "have utility" and "be of significant practical help in ending the controversy." *Id.* (internal quotations and citations omitted). Accordingly, a declaratory judgment action is appropriate when it "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding" but is "inappropriate when it is brought solely to adjudicate past conduct." *Id.* (internal citations and quotations omitted).

Disassembly argues that the court should dismiss the complaint for failure to state a plausible claim for declaratory relief because allegations therein are contradicted by the Operating Agreements, which are attached to and supersede the complaint.[9] (D.I. 7 at 2, 8–11) Mr. Wargo admits in his complaint that he signed each Operating Agreement three times and

---

[9] The parties raise various other arguments regarding their respective interpretations of the Operating Agreements, including their respective positions about intent, the main purpose and scope of those agreements, and whether those agreements are ambiguous. (D.I. 7 at 2–11; D.I. 8 at 4–8; D.I. 9 at 1–8) These arguments are not properly before the court in light of the provision requiring mandatory arbitration of disputes in the Operating Agreements. *See Priority Healthcare Corp. v. Aetna Specialty Pharmacy, LLC*, 590 F. Supp. 2d 663, 667–69 (D. Del. 2008) (declining to exercise jurisdiction over a declaratory judgment action that "would effectively void a mutually agreed upon and enforceable" arbitration clause in the parties' contract).

5

does not dispute the authenticity of any of those signatures. (D.I. 1 at ¶¶ 18, 20; D.I. 8) More specifically, Mr. Wargo signed each Operating Agreement as a "Manager." (D.I. 1 at ¶¶ 18, 20; D.I. 1-1 at 44; D.I. 1-2 at 43) Section 15.6 of the Operating Agreements expressly states that any signatory to those agreements, including a "member of Management," is a party thereto. (D.I. 1-1 at 42, § 15.6; D.I. 1-2 at 41, § 15.6) Moreover, as the complaint admits, the Operating Agreements contain "substantively identical" dispute resolution clauses that require arbitration before the AAA for disputes arising out of those agreements. (D.I. 1 at ¶ 15)

The complaint alleges that Mr. Wargo is not bound by the Operating Agreements' dispute resolution clauses because he did not sign those agreements in his "individual capacity and therefore is not a party to" them. (*Id.* at ¶¶ 16–21) Mr. Wargo has pled himself out of court because it is clear from the face of the Operating Agreements, which are attached as exhibits to the complaint, that he is party to those agreements as defined in section 15.6 based on his signature as a "Manager." *See Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018) (where a plaintiff's "own exhibits contradict her allegations in the complaint, the exhibits control") (citing *Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010)).

Despite the disclaimer in the complaint that Mr. Wargo is not making merits-based challenges to the claims in the Demands against him in the instant suit (D.I. 1 at ¶ 13 n.1), he argues that any interpretation of section 15.6 that would make him a party to the Operating Agreements "would be incompatible with the clear purpose of the . . . Operating Agreements, which is to establish the 'rights and obligations of [the] Members' and to reflect the 'entire understanding among the Members.'" (D.I. 8 at 5) He also notes that section 15.6 is "buried on the fifteenth and sixteenth pages" of the respective Operating Agreements and is "titled 'Other Rules of Construction.'" (*Id.*) Mr. Wargo's assertion that he is not bound by the Operating

6

Agreements in his individual capacity and his argument that section 15.6 is "incompatible" with the "clear purpose" of Operating Agreements call for contract interpretation and go to the merits of the claims in the Demands that are grounded in the underlying Operating Agreements. Accordingly, the issues and arguments raised in Mr. Wargo's complaint are not properly before this court and should be brought before the AAA, as he expressly agreed to do when he signed the Operating Agreements. (*See* D.I. 1 at ¶ 15; D.I. 1-1 at 42, §§ 15.6, 15.8; D.I. 1-2 at 41, §§ 15.6, 15.8)

Resolving the issue of whether Mr. Wargo is bound by the Operating Agreements in his individual capacity in a federal declaratory judgment action would enable Mr. Wargo to use such an action for the "improper purpose" of avoiding a valid dispute resolution clause. *See Priority Healthcare Corp. v. Aetna Specialty Pharmacy, LLC*, 590 F. Supp. 2d 663, 667–69 (D. Del. 2008) (noting the "public policy interest in enforcing arbitration clauses" and declining to exercise jurisdiction over a declaratory judgment action that "would effectively void a mutually agreed upon and enforceable" arbitration clause in the parties' contract). Therefore, the court recommends granting Disassembly's motion with prejudice.

## V.  CONCLUSION

For the foregoing reasons, the court recommends GRANTING Disassembly's motion to dismiss for failure to state a claim with prejudice. (D.I. 6)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2).  The objections and responses to the objections are limited to ten (10) pages each.  The failure of a party to object to legal conclusions may result in the loss of the right

7

to de novo review in the District Court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: February 17, 2021

_____
Sherry R. Fallon
United States Magistrate Judge

8